Justice NEWBY
dissenting.
In this case we address the level of corroboration required to substantiate an informant’s tip such that probable cause exists to obtain a search warrant for a defendant’s property. The majority concludes that, under the anonymous tip standard, “the State is not entitled to any great reliance” on a tip from a known informant. In doing so, the majority ignores the fact that the informant clearly was not anonymous and incorrectly affords his tip the same weight as if he were completely unknown to police. Because a tip provided to police by an identified informant is inherently more reliable than a completely anonymous tip, it should require less independent corroboration. Although purportedly applying a “common sense” approach, the majority’s rigid, formalistic dissection of the evidence corroborating the tip undermines the purpose of the required totality of the circumstances test. Here, the information provided in the tip, most of which was corroborated by other evidence, under a common sense application of the totality of the circumstances, establishes probable cause to believe that defendant was growing marijuana on his property. *675 Therefore, the warrant was valid, and the search did not violate the Fourth Amendment. Accordingly, I respectfully dissent.
The Fourth Amendment to the Constitution of the United States contains a guarantee against unreasonable searches and seizures and provides that “no Warrants shall issue, but upon probable cause.” In State v. Arrington our Court adopted the Supreme Court of the United States’ “totality of the circumstances” test for determining when probable cause exists:
“The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the ‘veracity’ and ‘basis of knowledge’ of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.”
311 N..C. 633, 638, 319 S.E.2d 254, 257-58 (1984) (emphasis added) (quoting Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527, 548 (1983)). A reviewing court should grant “great deference” to the magistrate’s determination of probable cause, id. at 638, 319 S.E.2d at 258, keeping in mind that “ ‘[t]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants,’ ” State v. Sinapi, 359 N.C. 394, 398, 610 S.E.2d 362, 365 (2005) (quoting State v. Riggs, 328 N.C. 213, 222, 400 S.E.2d 429, 435 (1991)).
Tips from informants can establish probable cause if they are reliable. See Gates, 462 U.S. at 227, 233-34, 103 S. Ct. at 2326, 2329-30, 76 L. Ed. 2d at 541, 545. Tips from informants with a proven track record with police are considered trustworthy and can establish probable cause standing alone when the affidavit states that the informant is reliable and provides factual grounds to support that belief. See State v. Isleib, 319 N.C. 634, 635, 639, 356 S.E.2d 573, 574-75, 577 (1987) (concluding that an informant’s tip alone established probable cause because the informant had provided information to police on three prior occasions that had led to arrests and convictions). On the other hand, anonymous tips are generally insufficient standing alone to establish probable cause. Alabama v. White, 496 U.S. 325, 329, 110 S. Ct. 2412, 2415-16, 110 L. Ed. 2d 301, 308 (1990).
Not all anonymous tips, however, are created equal. Some bear more indicia of reliability than others, and in evaluating the totality of the circumstances, “the indicia of the tip’s reliability are certainly *676 among the circumstances that must be considered.” State v. Maready, 362 N.C. 614, 619, 669 S.E.2d 564, 567 (2008) (citing White, 496 U.S. at 330, 110 S. Ct. at 2416, 110 L. Ed. 2d at 309). “[The] view that tips fall into two stark categories that are wholly anonymous or wholly non-anonymous is inconsistent both with reality and with Fourth Amendment law. For in reality, tips fall somewhere on a spectrum of reliability . . . .” United States v. Perkins, 363 F.3d 317, 324 (4th Cir. 2004), cert. denied, 543 U.S. 1056, 125 S. Ct. 867, 160 L. Ed. 2d 781 (2005); see also Gates, 462 U.S. at 232, 103 S. Ct. at 2329, 76 L. Ed. 2d at 544 (“[T]ips doubtless come in many shapes and sizes” and “ ‘may vary greatly in their value and reliability.’ Rigid legal rules are ill-suited to an area of such diversity.” (quoting Adams v. Williams, 407 U.S. 143, 147, 92 S. Ct. 1921, 1924, 32 L. Ed. 2d 612, 617 (1972))). In a recent decision, the United States Supreme Court observed that even a wholly anonymous tip, without more, “can demonstrate sufficient indicia of reliability to provide reasonable suspicion to make [an] investigatory stop.” Navarette v. California,_ U.S. _, _, 134 S. Ct. 1683, 1688, 188 L. Ed. 2d 680, 687 (2014) (alteration in original) (quotation marks omitted) (concluding that a tip from an anonymous 911 caller that another vehicle ran her off the road “bore adequate indicia of reliability for the officer to credit the caller’s account” because the caller witnessed the dangerous driving and reported it immediately and because a 911 caller may.later be identified (quoting id. at_, 134 S. Ct. at 1688-90, 188 L. Ed. 2d at 687-89)).
When, however, the anonymous tip alone is insufficient, “the tip combined with corroboration by the police could show indicia of reliability that would be sufficient to [pass constitutional muster].” State v. Hughes, 353 N.C. 200, 205, 539 S.E.2d 625, 629 (2000). Thus, even when analyzing tips under the anonymous tip standard, there is a sliding scale, and the extent of independent corroboration required to render a tip reliable becomes a factual determination, “tak[ing] into account all the facts surrounding [the] tip.” Perkins, 363 F.3d at 324; see Hughes, 353 N.C. at 206, 539 S.E.2d at 630 (“ ‘[I]f a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable.’ ” (quoting White, 496 U.S. at 330, 110 S. Ct. at 2416, 110 L. Ed. 2d at 309)).
As illustrated by Navarette, a tipster is not treated as wholly unreliable simply because the affidavit does not disclose the tipster’s prior experience with law enforcement. It follows that less independent *677 verification is needed to substantiate a tip from an informant who is readily identifiable by police than one who is completely anonymous. See Maready, 362 N.C. at 619-20, 669 S.E.2d at 567-68 (giving significant weight to a tip when the tipster provided information to police in a face-to-face encounter and was, therefore, not completely anonymous); see also Perkins, 363 E3d at 323 (“Where the informant is known ... , an officer can judge the credibility of the tipster firsthand and thus confirm whether the tip is sufficiently reliable . . . .”). Moreover, because affidavits are practical documents and the existence of probable cause is a commonsense determination, the summary nature of the affidavit becomes less important when a tip shows some indicia of reliability and is corroborated by independent investigation.
Here the majority’s analysis recognizes that the informant was known and identified to police, yet it ignores that crucial fact to conclude instead that he “is an anonymous informant” whose tip “amounts to little more than a conclusory rumor.” However, the affidavit states that “within the past week [an officer] met with a confidential and reliable source of information that told him an indoor marijuana growing operation was located at [defendant’s property].” (Emphasis added.) Because the police knew the informant’s identity, the informant’s tip had some degree of reliability at the outset. Though the tip, at face value, may not be enough on its own to establish probable cause, the tip is more reliable than if the informant were completely anonymous. See Maready, 362 N.C. at 619-20, 669 S.E.2d at 567-68. Therefore, even without specific details on why the informant was a reliable source of information, the tipster should be afforded greater weight in the totality of the circumstances than if he were unknown and unidentified. See id. at 619, 669 S.E.2d at 567 (“The potential indicia of reliability include all ‘the facts known to the officers from personal observation’ including those that do not necessarily corroborate or refute the informant’s statements.” (internal citation omitted)).
The detectives’ subsequent investigation into the informant’s allegations sufficiently corroborated the tip that defendant was conducting a marijuana growing operation, and when taken together and viewed through the lens of common sense, the tip and corroborating evidence detailed in the first three paragraphs of the affidavit established “ ‘a fair probability that contraband or evidence of a crime [would] be found’ ” on defendant’s property. Arrington, 311 N.C. at 638, 319 S.E.2d at 258 (quoting Gates, 462 U.S. at 238, 103 S. Ct. at 2332, 76 L. Ed. 2d at 548). In the tip, the informant did not simply say *678 that there was a marijuana growing operation. He identified defendant by name and appearance, provided defendant’s address, specified that defendant was not currently living at the residence, and described the buildings that defendant was using to house the marijuana growing operation. The affiant was also familiar with defendant and his property from a prior, unrelated criminal case. Based on the tip, which already bore some indicia of reliability, detectives obtained utility records for the address and learned that defendant was the current subscriber, confirming a detail provided by the informant. Furthermore, according to a law enforcement officer with “extensive training and experience with indoor marijuana growing investigations on the state and federal level,” the two year history of “extreme high and low kilowatt usage” was “indicative of a marijuana grow operation,” just as the informant said.
The majority concludes for the first time that the opinion of a trained and experienced detective who analyzed the power usage is not sufficient, absent a comparative analysis, despite the fact that the detective reviewed power records for the preceding two years. In doing so, the majority ignores the expertise of trained and experienced law enforcement officers. Under the majority’s reasoning, detectives should have invaded the privacy of innocent, neighboring landowners by obtaining their power records in order to conduct a comparative analysis. Even so, detectives here did not rely solely on the utility bills to establish probable cause; rather, the unusual power usage was just another piece of evidence that helped bolster the informant’s reliability and corroborate his tip that defendant was housing an indoor marijuana growing operation.
Detectives further confirmed the information in the tip by conducting surveillance of defendant’s property. Despite the noticeable absence of gardens or potted plants around the property, officers observed multiple horticultural items in plain view, including “potting' soil, starting fertilizer, seed starting trays, plastic cups, metal storage racks, and portable pump type sprayers.” Based on their training and experience, detectives determined that these objects were consistent with a marijuana growing operation. This observation is yet another circumstance establishing the informant’s reliability and lending support to the tip that defendant was operating an indoor marijuana growing operation.
Moreover, the fact that any of the corroborating evidence can be explained by innocent behavior does not mean it cannot also be used to establish probable cause, as the majority suggests. The possibility *679 of innocent behavior does not rule out probable cause. Gates, 462 U.S. at 243 n.13, 103 S. Ct. at 2335 n.13, 76 L. Ed. 2d at 552 n.13 (“[I]nnocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to sub silentio impose a drastically more rigorous definition of probable cause than the security of our citizens’ demands. ... In making a determination of probable cause the relevant inquiry is not whether particular conduct is ‘innocent’ or ‘guilty,’ but the degree of suspicion that attaches to particular types of noncriminal acts.” (internal citation omitted)).
Applying the required commonsense approach to the totality of the circumstances, the information contained in the affidavit established a “fair probability” that defendant was conducting an indoor marijuana growing operation. Detectives received a tip from an identified informant who provided details about defendant, his property, and his indoor marijuana growing operation. In a subsequent investigation, a trained and experienced detective concluded that defendant’s power usage was indicative of a marijuana growing operation. Furthermore, surveillance of defendant’s property produced evidence consistent with a marijuana growing operation. This circumstantial evidence unequivocally supported the initial, detailed tip. Even under an anonymous tip standard, a known informant’s tip must be afforded more weight than if he were wholly anonymous. Each piece of independent, corroborating evidence thereafter substantiated the informant’s reliability, and the tip, combined with the corroborating evidence, provided a sufficient basis for the warrant. Therefore, the search was lawful. Accordingly, I respectfully dissent.